UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MAURICE HOSKINS,             )
                             )
          Petitioner,        )
                             )
     v.                      )          Case No. 4:22 CV 1124 RWS
                             )
RICHARD ADAMS,               )
                             )
          Respondent.        )

## MEMORANDUM AND ORDER

This matter is before me on Petitioner Maurice Hoskins' petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, his petition will be denied.

### Background

On February 25, 2019, pleaded guilty to two counts of second-degree murder, first-degree assault, two counts of first-degree assault of a law enforcement officer, and five counts of armed criminal action. The plea agreement specified that Hoskin's would be given concurrent life sentences of imprisonment for the murder counts and a consecutive 20-year term of imprisonment for the armed criminal action counts.

On June 5, 2019, Hoskins filed a Missouri Supreme Court Rule 24.035 post-conviction motion in the trial court. He asserted that his plea was not knowing and

voluntary because plea counsel incorrectly advised him that he would serve no more than 25 to 26 years "before going up for parole" and that he would only need to serve 3 more years on the 20-year armed criminal action sentence.

Hoskins' trial attorney testified at the post-conviction hearing. He attested that he told Hoskins that he must serve at least 85% of his life sentence and that the earliest he would be eligible for parole was after 25 ½ years. He told Hoskins that being eligible for parole doesn't mean or guarantee that he will be paroled and that he could serve the rest of his life in prison. [ECF # 9-2 at 9] He testified that even if Hoskins were paroled from his life sentence he would then begin to serve the consecutive 20-year sentence for armed criminal action. That sentence has a mandatory minimum of 3 years before being eligible for parole. Hoskins' counsel testified that he told Hoskins that just because he would be eligible for parole after 3 years he may serve the entire 20-year sentence. [Id. at 10] He testified that he never promised or guaranteed to Hoskins any set term of imprisonment or likelihood of parole. [Id. at 11] The post-conviction judge found that Hoskins' guilty plea was knowing and voluntary and not the result of any coercion or misrepresentations by his counsel and that Hoskins' claim for relief was without merit. [ECF # 9-1 at 6]

Hoskins appealed the denial of post-conviction relief to the Missouri Court of Appeals. He argued the circuit court erroneously denied his claim of ineffective

assistance of counsel because his guilty plea was rendered involuntary when counsel incorrectly advised him that he would serve no more than 25.5 to 26 years before reaching parole eligibility.  The court of appeals denied relief with the following discussion:

> After reviewing the file, analyzing the briefs and considering the arguments, we find that Movant's belief that he would be eligible for parole in 25.5 to 26 years is not reasonable. More specifically, Movant argues that he agreed to plead guilty because his plea counsel informed him that he would serve no more than 26 years in the department of corrections for the murder second degree charges before becoming parole eligible because his time in the justice center, while awaiting trial, would satisfy the consecutive 20-year armed criminal action counts. Movant seems to argue that his pretrial incarceration satisfied the 20-year armed criminal action sentence that was inexplicably reduced to three years or, in the alternative, this consecutive sentence simply disappeared since he was guaranteed parole within 25.5 to 26 years.
> 
> Although sentenced to a consecutive 20-year term of incarceration, Movant contends that his attorney guaranteed him that his accumulated pretrial jail time would eliminate the armed criminal action sentence. Movant's argument falls far short. First, his plea attorney testified that he did not promise Movant a specific parole eligibility date and, likewise, did not guarantee a minimum three year sentence for armed criminal action. Second, the facts conflict with Movant's theory. While accurate that his pretrial incarceration applies to his ultimate sentence, Movant was not incarcerated for three years before pleading guilty. While awaiting trial, he was in jail only a little more than two years and seven months, or the length of time from the July 13, 2016 offense date until he was transported to the department of corrections on February 27, 2019. His belief about his consecutive armed criminal action sentence disappearing due to his time awaiting trial is unreasonable considering his pretrial confinement is less than three years. It is equally unrealistic for Movant to assume that his 20-year consecutive sentence was instantaneously converted to three years, which is contrary to everything explained to him before and during his plea of guilty.

3

Despite this, Movant argues that his plea counsel misled Movant into expecting that he would be eligible for parole before the age of infirmity, which he contends was a reasonable belief. While he lacks a legal background, Movant contends that he could reasonably rely on his plea attorney's representations, legal advice and counsel when maneuvering the criminal justice system including the plea negotiation process. In fact, Movant asserts that plea counsel's parole eligibility advice contributed 75 to 80 percent of his decision to plead guilty.

Prior to Movant pleading guilty, Waltz met with his client, articulated very specific guidelines affecting Movant's parole eligibility and avoided making any guarantees. Initially, Waltz explained to Movant that he would serve 25.5 to 26 years for the life sentence on murder second degree before he would be eligible for parole due to the statutorily required 85 percent rule. Further, Waltz testified that he explained the 20-year sentence for armed criminal action was an additional term of incarceration. Waltz testified that he explained that this was a consecutive sentence and Movant was essentially beginning a new sentence for armed criminal action or "start(ing) at zero." Pursuant to the statutory guidelines, Waltz told Movant that it was mandatory that he serve a minimum of three years but the department of corrections would not necessarily release him after three years, adding that Movant could serve as many as five, eight and up to as many as 20 years for this additional sentence. Waltz testified that he did not promise or guarantee Movant that he would be eligible for parole within a defined number of years because multiple considerations influence this outcome as decided by the parole board.

Further, Appellant assured the court he was satisfied with counsel's performance. See Golliday v. State, 203 S.W.3d 258, 261 (Mo. App. S.D. 2006) ("A movant who repeatedly assures the court that he is satisfied with her counsel's performance is later barred from obtaining post-conviction relief based on ineffective assistance of counsel."); Wharton v. State, 431 S.W.3d 1, 7 (Mo. App. E.D. 2014) Movant testified that he was both "satisfied" and did not have any complaints about his attorney during the guilty plea. Additionally, he indicated that his plea attorney did a good job for him when later advised by the court of his rights pursuant to Rule 24.035. In his signed plea agreement filed with the court, Movant further agrees that he is "fully satisfied" with the legal representation that he received from his attorney and he "complied with all requests." Thus, the record refutes his claim about the ineffectiveness of his plea counsel.

Further undermining his claim about his plea attorney's alleged promises and guarantees, Movant refutes his own allegations on the record, under oath, denying that his attorney made any threats or promises to prompt his guilty plea. In fact, he told the motion court that he was "voluntarily" pleading guilty and doing so of "[his] own free will."(Tr.p.27)

[ECF # 9-5 at 6-8]  The court appeals affirmed the judgment of the post-conviction court.

Hoskins filed the present habeas petition asserting that his trial counsel was constitutionally ineffective.

### Legal Standard

A federal district court's power to review state court criminal decisions in a federal habeas corpus proceeding is limited. Harrington v. Richter, 562 U.S. 86, 92 (2011). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (citations omitted). A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. Without providing a specific standard, the Court noted that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Specifically, for a federal court to grant a writ of habeas corpus, a state prisoner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 102.

As with legal findings, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition, claims in a habeas petition "that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted." Skillicorn v. Luebbers, 475 F.3d 965, 976 (8th Cir. 2007). "Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." Id.

**Discussion**

Hoskins asserts only one ground for relief, ineffective assistance of counsel. To prevail on a claim alleging ineffective assistance of counsel, a defendant must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). For a convicted defendant to prove that his counsel was ineffective, the defendant must first show that the counsel's performance was deficient. Strickland, 466 U.S. at 687. This requires the defendant to show "that counsel made errors so serious that

7

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  A defendant can demonstrate that counsel's performance was deficient where counsel's performance "'fell below an objective standard of reasonableness.'" Wiggins v. Smith, 539 U.S. 510, 522 (2003) (quoting Strickland, 466 U.S. at 688).  But "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690). And "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689).  If the defendant fails to show that his counsel was deficient, the court need not address the second prong of the Strickland test. Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002).

Second, a defendant must demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Eighth Circuit has described the Strickland test as follows: the questions a court must ask are "[w]hether counsel's performance was in fact deficient and, if

so, whether the defendant was prejudiced by the inadequate representation.  If we can answer 'no' to either question, then we need not address the other part of the test." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).  When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Considered objectively, counsel's performance is gauged by "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" Fields, 201 F.3d at 1027 (quoting Strickland, 466 U.S. at 688). "[W]e avoid making judgments based on hindsight." Id.  A reviewing court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

Hoskins alleges that his trial counsel was unconstitutionally ineffective for advising Hoskins that "he would only serve a certain amount of time, before parole date."  In a supplemental page to his petition Hoskins asserts that his counsel was ineffective for "incorrectly advising the petitioner he would only serve a certain portion of time, before his eligibility for parole."  [ECF # 1 at 3 and 5]  Hoskins does not make any allegations about what his counsel purportedly told him or what his parole eligibility may be.

The Missouri post-conviction court and the Missouri court of appeals fully addressed Hoskins' claim that his trial counsel misrepresented the time he would

serve in prison and his eligibility for parole.  Both courts found his claim to be without merit.  Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus on behalf of a person in custody in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The decisions of the Missouri courts in this case addressed the merits of the claim Hoskins presents in this proceeding.  The decisions were neither contrary to, or involve an unreasonable application of, clearly established Federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  To the contrary, the state court decisions were based on the factual testimony of Hoskin's trial counsel concerning what he told Hoskins about the terms of imprisonment and the eligibility for parole.  Moreover, both courts also relied on Hoskins' statements that he was knowingly entering his voluntary plea, the plea was not based on any threats or

promises, and that his counsel did everything Hoskins asked and was fully satisfied with his counsel's services.  Because Hoskins has failed establish either requirement under 28 U.S.C. § 2254(d) to establish that he is entitled to habeas relief I will deny his petition.

### *Certificate of Appealability*

I have considered whether to issue a certificate of appealability in this matter. To grant a certificate of appealability, I must find a substantial showing of the denial of a federal constitutional right. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882–83 (8th Cir. 1994).

I believe that Hoskins has not made such a showing on the grounds raised in his petition.  As a result, I must defer to the state courts' rulings and deny Hoskins' request for habeas relief.  Therefore, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Maurice Hoskins' Petition for Writ of Habeas Corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

11

A separate judgment in accordance with this Memorandum and Order will be

entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2026.